**WO**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Allen Lorencz, Jr., | No. CV-19-05630-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Richard Allen Lorencz, Jr.'s application for disability insurance benefits by the Social Security Administration ("SSA") under the Social Security Act.  Plaintiff filed a complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 12, "Pl. Br.") Defendant SSA Commissioner's Response Brief (Doc. 13, "Def. Br."), and Plaintiff's Reply Brief (Doc. 16, "Reply").  The Court has reviewed the briefs and Administrative Record (Doc. 11, "R.") and now affirms the Administrative Law Judge's decision (R. at 18–30) as upheld by the Appeals Council (*Id.* at 1–3).

## I.    BACKGROUND

Plaintiff filed an application for disability insurance benefits on November 3, 2015, for a period of disability beginning on May 30, 2013.  (R. at 18.)  His claim was denied initially on March 10, 2016, and upon reconsideration on October 11, 2016.  (*Id.*)  Plaintiff appeared before the ALJ for a hearing regarding his claim on June 20, 2018.  (*Id.*)

On December 6, 2018, the ALJ issued a decision denying Plaintiff's claim. (*Id.* at 30.) The ALJ evaluated Plaintiff's disability based on the following severe impairments: lumbar radiculopathy, lumbar degenerative disc disease, and lumbar post laminectomy syndrome. (*Id.* at 20.) The ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.* at 22.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC") as follows: "[Plaintiff] had the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except: [Plaintiff] could not be exposed to dangerous machinery and unprotected heights. [Plaintiff] could occasionally climb ramps and stairs, kneel, crouch, and crawl. [Plaintiff] could never climb ladders, ropes, and scaffolds." (*Id.* at 23.) Accordingly, the ALJ found that Plaintiff was not disabled from May 2013 (the alleged disability onset date) through December 31, 2017 (the date last insured) because he could perform jobs that exist in significant numbers in the national economy, including housekeeper, office helper, and fast food worker. (*Id.* at 28-29.)

On September 18, 2019, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the agency's final decision. (*Id.* at 1–3.)

## II.   LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's

1  conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002)
2  (citations omitted).

3      To determine whether a claimant is disabled for purposes of the Act, the ALJ
4  follows a five-step process.  20 C.F.R. § 404.1520(a).  The claimant bears the burden of
5  proof on the first four steps but the burden shifts to the Commissioner at step five.  *Tackett*
6  *v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  At the first step, the ALJ determines whether
7  the claimant is presently engaging in substantial gainful activity.  20 C.F.R.
8  § 404.1520(a)(4)(i).  At step two, the ALJ determines whether the claimant has a "severe"
9  medically determinable physical or mental impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  At
10 step three, the ALJ considers whether the claimant's impairment or combination of
11 impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P
12 of 20 C.F.R. Part 404.  20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is automatically
13 found to be disabled.  *Id.*  At step four, the ALJ assesses the claimant's RFC and determines
14 whether the claimant is still capable of performing past relevant work.  20 C.F.R.
15 § 404.1520(a)(4)(iv).  If not, the ALJ proceeds to the fifth and final step, where she
16 determines whether the claimant can perform any other work in the national economy
17 based on the claimant's RFC, age, education, and work experience.  20 C.F.R.
18 § 404.1520(a)(4)(v).  If not, the claimant is disabled.  *Id.*

19 **III.   ANAYSIS**

20     In Part A of the "Legal Argument" section of his opening brief, entitled
21 "Introduction," Plaintiff seems to suggest that he is raising four assignments of error on
22 appeal.  (Pl. Br. at 4 ["The ALJ erred by: 1) rejecting the medical opinion of Dr. Briggs,
23 examining physician, of disabling limitations; 2) rejecting Lorencz's self-reports; 3) failing
24 to explain why the objective data was believed to be inconsistent with medical opinion and
25 reported symptoms; and 4) failing to address statutory factors when weighing evidence."].)
26 However, the "Legal Argument" section of the brief only contains two additional
27 headings—Part B pertains to the first assignment of error, the rejection of Dr. Briggs's
28 opinion (*id.* at 4-10), and Part C pertains to the second assignment of error, the rejection of

- 3 -

Plaintiff's symptom testimony (*id.* at 10-25).   Moreover, Part C contains an array of subheadings that identify various errors the ALJ allegedly committed when rejecting Plaintiff's symptom testimony, and Plaintiff repeatedly argues under those subheadings that the ALJ failed to provide sufficient explanations and/or to address statutory factors. Thus, the Court construes the third and fourth issues identified in the "Introduction" section of Plaintiff's brief not as standalone assignments of error, but as descriptions of the types of errors that the ALJ allegedly made when rejecting Dr. Briggs's opinion and Plaintiff's symptom testimony.[1]

A.    The ALJ Did Not Err In Rejecting Dr. Briggs's Medical Opinion

Plaintiff's first assignment of error is that the ALJ erred when rejecting the medical opinion of Dr. Briggs, his examining physician.  (Pl. Br. at 4–10.)

Although "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.*  This is so because treating physicians have the advantage of in-person interaction and typically a longer history of treatment than a claimant's other doctors, and their "subjective

---

[1]    Under one of the subheadings in Part C of his opening brief, Plaintiff seems to suggest that the ALJ erred by failing to include any mental limitations in the RFC.  (Pl. Br. at 22-24.)  The Commissioner did not construe this as a separate argument.  (Def. Br. at 10 ["Plaintiff argues that the ALJ should have found a severe mental impairment, but he fails to raise this as a separate argument and simply includes it in the context of disputing the ALJ's symptom evaluation."].)  The Court agrees with the Commissioner's interpretation and concludes, in any event, that Plaintiff waived any argument on this issue by failing to cite any relevant statutes, regulations, or cases to support such a claim. LRCiv 16.1(a)(4) ("Each contention must be supported by specific reference to the portion of the record relied upon and by citations to statutes, regulations, and cases supporting Plaintiff's position.").  For similar reasons, the Court does not address Plaintiff's assertion, raised in a cursory footnote on the last page of his brief, that the ALJ erred when rejecting lay witness reports by Plaintiff's wife.  (Pl. Br. at 25 n.15.)

1   judgments . . . are important, and properly play a part in their medical evaluations." *Embrey*
2   *v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

3        An ALJ "may only reject a treating or examining physician's uncontradicted
4   medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc.*
5   *Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester*, 81 F.3d at 830–31). "Where such
6   an opinion is contradicted, however, it may be rejected for specific and legitimate reasons
7   that are supported by substantial evidence in the record." *Id.*  An ALJ meets this standard
8   by "setting out a detailed and thorough summary of the facts and conflicting medical
9   evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*,
10  881 F.2d 747, 751 (9th Cir. 1989).

11       On May 23, 2018, Dr. Briggs examined Plaintiff and provided a medical opinion.
12  (R. at 27, 838–64.)  Dr. Briggs opined Plaintiff was not able to complete an eight-hour
13  workday or a forty-hour workweek due to his limitations and that Plaintiff is incapable of
14  any meaningful work.  (*Id.* at 27, 863–64.)  Dr. Briggs opined that Plaintiff's disability was
15  expected to last longer than twelve months and that Plaintiff could sit for less than two
16  hours and stand or walk for less than two hours in an eight-hour workday.  (*Id.* at 27, 863.)
17  Dr. Briggs explained that Plaintiff needs to alternate between sitting, standing, and walking
18  every twenty to forty minutes and that Plaintiff needs to rest for ten to fifteen minutes when
19  he changes positions.  (*Id.* at 27, 863.)  Dr. Briggs also opined Plaintiff would miss work
20  more than six days per month due to his medical condition and that there were severe side
21  effects from his medication, including addiction.  (*Id.* at 27, 864.)

22       The ALJ assigned "minimal weight" to Dr. Briggs's opinion and provided the
23  following rationale for this determination: "The opinion was authored after [Plaintiff's]
24  date last insured.  Further, this opinion is inconsistent with [Plaintiff's] actual ability to
25  function.  The medical evidence reveals [Plaintiff] was able to perform yard work, cut pool
26  lining, do foundation work on his pool, perform household chores, and walk his children
27  home from school since the alleged onset date."  (*Id*. at 27.)

28

1       Plaintiff argues this rationale was faulty.  As for the ALJ's first proffered reason for

2   discrediting Dr. Briggs's opinion—that it was rendered five months after Plaintiff's date

3   last insured—Plaintiff contends this is a "red herring" because medical opinions rendered

4   after the period of disability should not be disregarded based solely on timing.  (Pl. Br. at

5   5-6; Reply at 2-3.)  The problem with this argument is that the ALJ did not reject Dr.

6   Briggs's opinion based solely on timing.  Instead, the ALJ also relied on the fact that Dr.

7   Briggs's opinion differed drastically from the other "medical evidence" in the record,

8   including medical opinions rendered during the alleged period of disability.

9       For example, treating physician assistant ("PA") Kareem Anderson opined that

10  Plaintiff was not permanently disabled.  (R. at 27, 574.)  PA Anderson was the only treating

11  provider during the period of alleged disability to offer an opinion on Plaintiff's medical

12  condition.  The ALJ assigned great weight to PA Anderson's opinion that Plaintiff would

13  not be considered permanently disabled after his February 2017 surgery.  (*Id.* at 27.)

14  Although PA Anderson was not a treating physician, he was the only treating medical

15  provider Plaintiff saw.  *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017) (finding an

16  ALJ should defer to medical opinions from treating providers who are not acceptable

17  medical sources when they are the only primary care medical provider a claimant has seen

18  on a regular basis).  It was permissible for the ALJ to choose to credit the opinion of a

19  treating provider who treated Plaintiff during the period of alleged disability over the

20  contrary opinion of a treating doctor who rendered his opinion months after the alleged

21  period of disability ended.[2]

22      It is also notable that Dr. Briggs was the only medical provider who found Plaintiff

23  had antalgic gait, reduced strength, reduced sensation, and poor coordination.  Plaintiff's

24  medical records generally showed that he had normal gait, reflexes, and strength.  (*Id.* at

25  328, 335, 357, 361, 374, 378, 382, 456, 487–88, 551–52, 554, 565–66, 572, 580, 585–86,

26  657, 660, 664, 694–95, 699, 704–05, 709, 714, 719, 724–25, 729, 772, 788, 817, 825, 841–

27

28  [2]     The ALJ also credited the opinion of medical consultant Melvin Roberts, who opined that Plaintiff could perform light work, which was consistent with the activities in which Plaintiff regularly took.  (*Id.* at 26–27.)

43.)  Given this backdrop, it was not error for the ALJ to discredit Dr. Briggs's opinion based on a combination of its timing and its inconsistency with the other "medical evidence."

Plaintiff also contends the ALJ erred in finding that his activities of daily living ("ADLs") were inconsistent with Dr. Briggs's opinion because the ALJ failed to explain *why* the ADLs undermined that opinion.  (Pl. Br. at 6–7.)  The Court disagrees.  The ALJ specifically noted that Plaintiff "was able to perform yard work, cut pool lining, do foundational work on his pool, perform household chores, and walk his children home from school since the alleged onset date."  (R. at 27.)  Although the ALJ did not explain why each of these activities was inconsistent with Dr. Briggs's opinion, the ALJ cited sufficient evidence in the record and statements by Plaintiff to enable this Court to reasonably discern her path and meaningfully determine that her conclusions are indeed supported by substantial evidence.  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (reiterating that ALJs may explain their decisions with unideal clarity so long as their reasoning is reasonably discernible).  It is easy to understand how such activities could be viewed as inconsistent with a medical opinion that Plaintiff was incapable of any meaningful work.  And although Plaintiff identifies various reasons why a different factfinder could have potentially viewed each of the proffered ADLs as consistent with Dr. Briggs's opinion, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas*, 278 F.3d at 954.

B.    The ALJ Did Not Err In Rejecting Plaintiff's Symptom Testimony

Plaintiff's second assignment of error is that the ALJ erred in rejecting his symptom testimony.  (Pl. Br. at 10–25.)

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms.  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).  First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms

alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)).   If so, and absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence.   *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).   This is the most demanding standard in Social Security cases.   *Garrison*, 759 F.3d at 1014–15.

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."   *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).   General findings are insufficient.   *Id.*   "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."   *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).   "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct."   *Molina*, 674 F.3d at 1112.   For instance, the ALJ may consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'"   *Id.* (quoting *Lingenfelter*, 504 F.3d at 1040). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *id.* at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009).   Additionally, the ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms."   *Lingenfelter*, 504 F.3d at 1040; *see* 20 C.F.R. § 404.1529(c)(3).   "Impairments that can be controlled effectively with medication are not disabling."   *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).   The ALJ may properly consider that the medical record lacks evidence to support certain symptom testimony, but that cannot form the sole basis for discounting the testimony.   *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Here, Plaintiff testified that he is unable to work due to back and leg pain and

testified that his pain is exacerbated by sitting, lifting, and standing.  (R. at 23.)  Plaintiff also testified that his 2017 back surgery was unsuccessful and resulted in increased pain.  (*Id.*)  Plaintiff further testified that he can sit, stand, and walk for only thirty minutes at a time.  (*Id.*)  And Plaintiff testified that he needs to elevate his leg for six to seven hours a day and that his mental impairments affect his ability to work.  (*Id.*)

The ALJ found "that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (R. at 23.)  More specifically, the ALJ found that Plaintiff's symptom testimony was not consistent with the medical record, which showed that Plaintiff's limitations were not debilitating.  (*Id.* at 24.)  For example, the ALJ noted that although Plaintiff asserted that he had knee pain that permeates throughout his lower extremities, x-rays of his bilateral knees were unremarkable.  (*Id.* at 25, 346–47, 450, 644, 647.)  The ALJ further noted that, in March 2014, Plaintiff had normal gait and coordination.  (*Id.* at 25, 331.)  On May 1, 2014, an examination showed that Plaintiff had right knee tenderness, mild crepitus, right knee tenderness, good range of motion in the right knee, no joint laxity, a normal left-knee, and normal gait and coordination.  (*Id.* at 25, 326–28.)  In August 2015, Plaintiff had increased pain in his lumbar spine that radiated to his lower extremities but denied any bladder or bowel dysfunction and was able to ambulate without an assistive device and with a normal gait.  (*Id.* at 25, 356–58.)  On October 14, 2015, Plaintiff had normal gait and station, normal sensation, full spinal range of motion, normal foot and ankle strength bilaterally, and a negative straight leg raise test.  (*Id.* at 25, 374.)  Plaintiff went to the emergency room on October 13, 2017 and reported chest pain, shortness of breath, dizziness, headache, left arm weakness but had no back pain, a nontender back, normal musculoskeletal range of motion, normal strength, and no tenderness or swelling.  (*Id.* at 25, 609, 635–38.)  These medical records constituted substantial evidence supporting the ALJ's finding of inconsistency.

In a similar vein, although the ALJ acknowledged that Plaintiff's low-back pain was consistent with a severe impairment, substantial evidence supports the ALJ's determination that the medical record did not establish this limitation would prevent Plaintiff from light work. (*Id.* at 25.) Plaintiff attended physical therapy in 2014, which helped decrease pain. (*Id.* at 25, 272–73, 275–76, 278–79, 280–81, 284–85, 287–88.) Plaintiff argues this was a mischaracterization because he actually stopped attending physical therapy due to minimal progress in reducing pain. (Pl. Br. at 17; R. at 25, 313, 359.) However, this was before Plaintiff's surgery in 2017 and discounts all the occasions Plaintiff felt relief from physical therapy. (*Id.*) The record also indicated that Plaintiff's progress plateaued, not that he was making no progress at all. (R. at 313.) Additionally, in December 2015, Plaintiff was not using narcotic pain relievers often and was not taking anti-inflammatories. (*Id.* at 25, 454, 692, 697, 702, 707.) The ALJ found this was inconsistent with Plaintiff's allegations of disabling back and leg pain. (*Id.* at 25.) This was a permissible inference. *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) (a claimant's pursuit of only conservative treatment is a proper reason to discount his testimony regarding his impairments).

The ALJ concluded that Plaintiff's treatment was beneficial. (R. at 26.) Plaintiff indicated that medial branch blocks did not provide relief for his low back pain. (*Id.* at 25, 443, 454.) In 2016, Plaintiff had a series of epidural steroid injections. (*Id.* at 25, 493–99.) On February 22, 2017, Plaintiff had a lumbar spine fusion. (*Id.* at 26, 558.) Two months after the surgery, Plaintiff reported he was doing well with lower back pain and sensation of the bottom of his left-foot, he ambulated with a normal gait and station, was able to toe and heel walk, exhibited limited flexion and extension of the lumbar spine, no tenderness to palpation, nonpainful facet loading, and normal neurological findings. (*Id.* at 26, 563, 565, 716, 727.) Plaintiff was inconsistent with physical therapy and doing home exercises after his surgery. (*Id.* at 26, 588.) On December 20, 2017, Plaintiff reported to his pain management provider that his pain was stable and tolerable, he denied side effects or complications from the medication he was using, and he stated his quality of life had improved and he was able to perform his activities of daily living. (*Id.* at 26, 563–68, 697–

701.)  Plaintiff was also not using narcotic pain relievers at this time.  (*Id.* at 26, 699.)
Plaintiff argues this does not mean he no longer experienced pain, so the ALJ's reasoning
is flawed.  (Pl. Br. at 18.)  However, the medical evidence showed Plaintiff's quality of life
improved after the surgery and he was able to do much more than he had before.  Although
Plaintiff's pain was not completely eliminated, the ALJ identified evidence to show that
Plaintiff is able to engage in some activity, especially after the lumbar fusion surgery.  An
ALJ may properly discount symptom testimony based on its inconsistency with a
claimant's improvement with treatment.  20 C.F.R. § 404.1429(c)(3)(iv); *see Tommasetti*,
533 F.3d at 1040.

The ALJ also found that Plaintiff's ADLs were inconsistent with Plaintiff's
symptom testimony.  (R. at 26.)  Plaintiff reported he was able to do yard work, walk to
his children's school to pick them up, exercise on a treadmill, attend brunch on Sundays,
socialize with friends, and take care of his puppy. [3]  (*Id.* at 26, 278, 474, 511, 533, 543,
735, 739.)  Plaintiff performed household chores, including includes cleaning, laundry,
grocery shopping, and dishes.  (*Id.* at 26, 59, 69–70, 533.)  Eight months after his back
surgery, Plaintiff was able to perform yard work, including cutting bushes and cutting up
and disposing the liner of his swimming pool, which Plaintiff indicated was not difficult
for him to do.  (*Id.* at 26, 62, 636, 656.)  In November 2017, Plaintiff was able to work on
the foundation of his swimming pool.  (*Id.* at 26, 62, 636, 656.)  The ALJ found that
although Plaintiff said he spends his days resting due to his back pain, he told his provider
he cooks for his family, watches movies with his family, watches baseball, plays video
games, and takes care of his new puppy.  (*Id.* at 26, 69–70, 735, 739.)  Plaintiff also testified
that he could only be on his feet for about thirty minutes before he would be in pain, yet in
July 2017, Plaintiff traveled to Disneyland and had a good experience.  (*Id.* at 26, 781.)

Plaintiff argues his ADLs actually show he was constrained by his limitations.  (l.

---

[3]     Plaintiff argues that he simply lived with animals (as opposed to caring for them)
(Pl. Br. at 20), but the evidence in the record, including Plaintiff's own testimony during
the hearing (R. at 59 ["I get up roughly about 7:30ish, feed the animals, take them outside,
maybe get a cup of coffee . . . ."]), supports the ALJ's characterization.

Br. at 21.)  For example, Plaintiff testified he would not walk around the block without using a cane or limping.  (Pl. Br. at 21; R. at 551, 600.)  Plaintiff also testified that he mostly sits at home and reclines six to seven hours a day.  (Pl. Br. at 21; R. at 65, 74, 545.)  And Plaintiff testified that he had difficulty dressing and bathing, although he can do it on his own.  (R. at 208, 264, 600.)  Despite these limitations, Plaintiff's other activities show that his ADLs were not overly inhibited.  The ALJ found that "[t]he physical and mental capabilities requisite to performing many of the task described above, as well as the social interactions belie [Plaintiff's] allegations and instead support the conclusion reached herein."  (*Id.* at 26.)  The ALJ also noted that, given Plaintiff's claims of disabling symptoms, there would presumably be an indication in the treatment records of restrictions placed on Plaintiff by his treating doctors, yet there are no restrictions recommended by his treating doctor.  (*Id.* at 26.)

The ALJ provided "specific, clear and convincing" reasons supported by substantial evidence in explaining why the medical evidence and Plaintiff's ADLs contradicted Plaintiff's symptom testimony.  The Court finds no error.

**IT IS THEREFORE ORDERED** affirming the December 6, 2018 decision of the Administrative Law Judge (*Id.* at 18–30), as upheld by the Appeals Council on September 18, 2019 (*Id.* at 1–3).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 1st day of March, 2021.

Dominic W. Lanza
United States District Judge